CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/28/2020
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SCOTT MATTINGLEY,<br><br>*Defendant.* | CASE NO. 6:15-cr-00005<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Before the Court is Defendant Robert Scott Mattingley's "Motion for First Step Act – Compassionate Release." Dkt. 119. Mattingley requests, due to alleged undertreated phantom limb pain, other medical conditions, and his family's financial hardships, that he be released early from incarceration pursuant to 18 U.S.C. § 3582(c)(1). According to the Bureau of Prison's website, Mattingley is set to be released on September 15, 2021. Because Mattingley has not shown that he exhausted available administrative appeals in petitioning the Bureau of Prisons to bring this motion on his behalf, or that he should be excused from having to exhaust these appeals, his motion must be denied. Furthermore, even if Mattingley had demonstrated exhaustion of administrative appeals or excusal therefrom, his circumstances do not constitute an "extraordinary and compelling reason" for early release under § 3582(c)(1).

**Background**

Mattingley was sentenced on November 20, 2017 to fifty months in the custody of the Bureau of Prisons ("BOP"). Dkt. 75. Since that time, he has filed three Reduction in Sentence

1

("RIS") requests to the BOP requesting early release. Dkt. 119-5, 126-1, 126-4, 126-5.[1] Mattingley's chief complaint in his RIS requests relate to what he alleges to be insufficient medical care given his unique health needs, as well as the financial difficulties his family has experienced as a result of his incarceration. *Id.* Mattingley is a double amputee and requires the use of prosthetics to ambulate. Dkt. 119 at 1. This bilateral amputation of his legs has for years caused chronic phantom pain and a propensity for infection. *Id.* He also suffers from diabetes, kidney disease, and high blood pressure. *Id.*; Dkt. 73-1.

Since his incarceration at Federal Medical Center Devens ("FMC Devens") began in November 2017, Mattingley has been transferred five times to Nashoba Valley Medical Center ("Nashoba Valley"). The approximate time and reason for each hospitalization are as follows:

- September 2018: Mattingley fell and suffered a head injury, loss of consciousness, a contusion to the right shoulder, and a sprained neck. He attributes the fall to an ill-fitting prosthesis. Dkt. 119 at 3.

- October 2019: Mattingley experienced atrial fibrillation with rapid ventricular response, which, as defense counsel articulates, is "when the top chambers and bottom chambers of the heart are both misfiring and not working in coordination." *Id.* at 3. Doctors at Nashoba Valley performed a trans-esophageal echocardiography with cardioversion, in which the heart is shocked back to a normal rhythm. He was then prescribed heart medication and released to FMC Devens. *Id.*

- November 2019: Mattingley was taken to Nashoba Valley for an "extremely low hemoglobin reading," because he was losing blood through his stool. He was admitted to intensive care and given multiple blood transfusions. He was released two days later. *Id.* at 4.

- December 2019: Mattingley was taken to Nashoba Valley due to a severe infection caused by a cut on one of his residual limbs that turned into an abscess with fluid collection.

---

[1] He has also brought numerous actions challenging both the conditions of his incarceration and his underlying conviction. Dkt. 99, 101; *Mattingley v. Coffee, et al.*, No. 1:2018-cv-11294 (D. Mass.) (*Bivens* action); *Mattingley v. Spaulding*, No. 1:18-cv-11569 (D. Mass.) (§ 2241 petition); *Mattingley v. Anderson, et al.*, No. 1:18-cv-12170 (D. Mass.) (*Bivens* action); *Mattingley v. Spaulding*, No. 1:19-cv-11990 (D. Mass.) (§ 2255 petition); *Mattingley v. Sheriff, et al.*, No. 7:19-cv-00638 (W.D. Va.) (§ 1983 action).

- Mattingley had a temperature of 102.9 degrees upon arriving at the hospital. *Id*. at 5.
- January 2020: Mattingley allegedly underwent a "routine scope procedure" that confirmed that there was no recurrence of a past ulcer. Dkt. 132.

More generally, Mattingley claims treatment for his phantom limb pain and prosthesis care at FMC Devens has been inadequate compared to his pre-incarceration care. Mattingley states that he no longer receives the pain medications he was prescribed prior to incarceration, and is now only receiving "ineffective drugs" with BOP staff neglecting his complaints of pain and resulting sleeplessness. Dkt. 119 at 5; Dkt. 119-5. With regard to his prostheses, Mattingley states that FMC Devens's prosthesis provider has not treated him often enough to ensure his prostheses remain adequately fitted. *Id*. He states these ill-fitting prostheses have caused several health issues, including his hospitalizations in September 2018 and December 2019. *Id*.

Although not discussed in the present motion or accompanying briefs, Mattingley's RIS requests also sought release because his "family at home (wife and daughter) is going through financial hardship as well." Dkt. 126-4. He states this is caused by his wife's care for her parents, who face their own medical issues, and his family's inability to cover their expenses based on their present earnings. *Id*.

While incarcerated, Mattingley states that he has participated in FMC programming and has remained free of discipline for any "serious" infractions. Dkt. 119 at 6. Mattingley states that if released, his wife Patty Mattingley "will provide him community support and help with transportation to the doctor once he is released from prison." *Id*. at 7.

**Analysis**

Prior to the passage of the First Step Act, only BOP could seek compassionate release on behalf of an incarcerated defendant for "extraordinary and compelling reasons," under § 3582(c)(1). Pub. L. No. 115-391, § 602, 132 Stat. 5194 (2018). The First Step Act amended the

3

statute to authorize defendants to seek compassionate release on their own behalf, provided the defendant first ask the BOP to do so and exhausts administrative appeals following denial of this request. *Id*. § 3582(c)(1). On January 17, 2020, Mattingley filed the present motion seeking Compassionate Release pursuant to 18 U.S.C. 3582(c)(1), contending first that BOP failed to timely respond to his request to bring a compassionate motion on his behalf, thus excusing his duty under the statute to exhaust all administrative appeals. Dkt. 119 at 7. Mattingley further contends that release is proper because his medical conditions cannot properly be treated while incarcerated at BOP, thus constituting an "extraordinary and compelling reason" for compassionate release. *Id*. The Court will address these arguments in turn.

As the party "trying to change the status quo," it is Mattingley's burden to prove that he is entitled to a reduction of sentence under § 3582(c)(1). *United States v. Karr*, No. 6:17-cr-25-REW, 2020 WL 774363, at *3 (E.D. Ky. Feb. 18, 2020); *United States v. Mitchell*, No. 5:10-cr-50067-001, 2020 WL 544703, at *2 (W.D. Ark. Feb. 3, 2020) (stating that it is the defendant's burden to prove entitlement to compassionate release); *United States v. Israel*, No. 05-cr-1039 (CM), 2019 WL 6702522, at *9 (S.D.N.Y. Dec. 9, 2019) (same); *see also United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) ("It is the defendant's burden to establish that he warrants a § 3582(c)(2) reduction.").

### A. Exhaustion of Administrative Remedies

Prior to filing a motion for compassionate release, Mattingley must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). However, this requirement is excused upon "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *Id*. "[T]his statutory exhaustion requirement has been interpreted to excuse full exhaustion of

4

administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request. *United States v. Nance*, No. 7:92-cr-00135, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020) (Jones, J.).

Mattingley addresses administrative exhaustion in only a generalized manner in his motion. He states that although his efforts to appeal BOP's denial of his RIS requests have "been frustrated by his hospitalization and continual denials by BOP staff," Dkt. 119 at 7, the Court should find exhaustion excused because FMC Devens's warden on several occasions failed to respond to Mattingley's RIS requests within 30 days, *see* Dkt. 119 at 7, 11. The Government disputes this, however, asserting that all three RIS requests were denied within 30 days as required by § 3582(c)(1). Dkt. 126 at 8. The parties do not appear to dispute that Mattingley did not exhaust all administrative appeals available to him with respect to any of his three RIS requests. Dkt. 126 at 9; 127 at 2.

"[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013) (discussing administrative exhaustion under the Prison Litigation Reform Act); *see also Hill v. Haynes*, No. 3:06-cv-136, 2014 WL 4197588, at *3 (N.D. W. Va. Aug. 22, 2014) ("The circuit courts of appeals have uniformly found that a judge can resolve factual disputes concerning exhaustion of administrative remedies."). As in litigation governed by the Prison Litigation Reform Act ("PLRA"), district courts have engaged in similar scrutiny of the record in § 3582(c)(1) motions when exhaustion is disputed. *E.g.*, *United States v. Bolino*, No. 06-cr-0806, 2020 WL 32461, at *2 (E.D.N.Y. Jan. 2, 2020).[2]

---

[2] In other contexts—most notably in PLRA litigation—the Government has the burden to prove exhaustion by a preponderance of the evidence, *Small*, 728 F.3d at 271; *Kershner v. Wright*, No. 7:16-CV-00063, 2016 WL 7131584, at *1 (W.D. Va. Dec. 5, 2016) (Urbanski, J.), with courts

5

Because Mattingley does not appear to contend that he exhausted the BOP's appeals process with respect to any one of his RIS requests, the specific issue for the Court to resolve is whether FMC Devens's warden responded to Mattingley's three RIS requests within 30 days. Mattingley attaches to his motion the purported RIS requests, the warden's responses denying those requests, and sworn affidavits in which Mattingley lays out the timeline for those submissions and responses. Dkt. 119-5. The Government's response in opposition to Mattingley's motion contains specific refutations of Mattingley's timelines for these three RIS requests and their subsequent denials, providing alternate timelines for when they were received by BOP staff and when they were denied by the warden. In his reply brief, Mattingley responds only to the Government's contentions regarding his second RIS, denied by the Government on May 2, 2019. However, the parties dispute when exactly Mattingley actually submitted this RIS to BOP.

Mattingley and the Government submit contradictory evidence as to this second RIS. Mattingley attached to his motion a sworn affidavit stating that he submitted this RIS on March 13, 2019, to "Ms. Ogilvie, the social worker in charge of handling these requests." Dkt. 119-5. The RIS itself, also attached, is dated March 14, 2019 by Mattingley. Under the "Subject" or body of the request, Mattingley states: "I would like to apply for the Compassionate Release Program under the law that Trump signed into law in Dec. 2018 (Second Chance/First Step Act). I await your prompt Reply." Dkt. 119-5 at 5 (referencing the First Step Act of 2018). As opposed to the Government's exhibits, it is not stamped or marked by the receiving BOP staff member, and the

---

treating administrative exhaustion as an affirmative defense to be raised and proved by the Government, *Jones v. Bock*, 549 U.S. 199, 211 (2007). Although there are reasons to doubt that such a burden would likewise be placed on the Government in this context, *see Karr*, 2020 WL 774363, at *3; *Mitchell*, 2020 WL 544703, at *2, even if the burden *were* placed on the Government here to prove exhaustion rather than Mattingley, the Government has provided ample evidence and argument to meet any such burden.

6

spaces marked "Signature Staff Member" and "Date" (for that signature) are blank. Dkt. 119-5 at 5. Mattingley also attaches to his motion a letter by FMC Devens's warden written "in response to your request for Compassionate Release/Reduction in Sentence (RIS) consideration received April 8, 2019, wherein you are requesting to be considered for RIS based on being medically debilitated." Dkt. 119-5 at 6. The letter, dated May 2, 2019, denies the RIS. *Id*.

On the other hand, the Government in its briefing makes no mention at all of an RIS received on March 13 or March 14 of 2019. Instead, the Government states in its brief opposing Mattingley's motion that while BOP received a form that was signed and dated "March 27, 2019" by Mattingley, it did not actually receive the form from Mattingley until April 8, 2019. Dkt. 126 at 5, n.1. As in Mattingley's timeline, the Government states that this RIS was denied on May 2, 2019. Dkt. 126 at 5 (citing Mattingley's exhibit, Dkt. 119-5). The Government attached to its opposition brief this April 8 RIS, which appears to be an entirely different RIS than the one attached to Mattingley's motion. *Compare* Dkt. 126-4 *with* Dkt. 119-5 at 5. This April 8 RIS, appearing to be in the same handwriting as Mattingley's form, is dated March 27, 2019 with "Rec. 4/8/2019" handwritten in the top right corner of the form, presumably by the BOP staff receiving it. Dkt. 126-4. In the April 8 RIS, Mattingley details at length the chronic phantom pain he is experiencing as well as his family's hardships caused by his incarceration. *Id*. It appears, then, that the parties agree that the warden responded to an RIS request on May 2 but disagree as to which of the two RIS forms his May 2 denial responded.

It is clear from the face of these forms that the warden's denial was in response to the April 8 RIS submitted by the Government, not the March 14 RIS submitted by the Mattingley. First, the warden's response references "your … RIS … received April 8, 2019." Dkt. 119-6. Only the Government's RIS features this April 8, 2019 date. Dkt. 126-4. Second, the warden's letter

7

states that "you are requesting to be considered for RIS based on being medically debilitated." *Id*. Only the Government's RIS mentions any medical debilitation. Mattingley's March 14 RIS makes no reference to a medical debilitation, merely stating that Mattingley seeks compassionate release under the First Step Act, which can be granted for reasons other than medical debilitation. Third, appearing at the top of the Government's April 8 RIS is "S. Ogilvie, LSW, BCD, Clinical Social Worker, FMC Devens." Dkt. 126-4. While her name might appear on many forms as a routine matter, Ms. Ogilvie is the person to whom Mattingley states he gave his March 14 RIS. Fourth, although the Government's April 8 RIS features only a handwritten "Rec. 4/8/2019," rather than an official BOP stamp appearing on other forms submitted by Mattingley and received by BOP, *see e.g.* Dkt. 119-5 at 9; Dkt. 126-4, Mattingley's March 14 RIS features no indication whatsoever that it was ever received by BOP staff. Dkt. 119-5 at 5.

As a result of the foregoing, the Court finds the Government has shown that Mattingley's second RIS, like the others he submitted, received a response within the 30-day time frame. Thus, Mattingley cannot be excused from § 3582's requirement that he ask the BOP to bring a § 3582(c)(1) motion on his behalf, then fully appeal the denial of that request administratively. Because it is not disputed that Mattingley has not exhausted that appeals process, Dkt. 126 at 9; 127 at 2, his motion must be denied. Dkt. 119

### B. "Extraordinary and Compelling"

Even if Mattingley had exhausted his administrative remedies as required under 18 U.S.C. § 3582(c), he would still not be entitled to relief. Pursuant to § 3582(c), a court "may not modify a term of imprisonment once it has been imposed" unless "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, No. 1:07-cr-00037, 2019 WL 3337906, at *1 (W.D. Va. July 25, 2019) (Jones, J.). The U.S. Sentencing Guidelines Manual

("USSG") in turn defines "extraordinary and compelling" to include, *inter alia*, situations in which "[t]he defendant is suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1 (2018). The Sentencing Commission guidance also allows for release due to "family circumstances" in the event of "death or incapacitation of the caregiver of the defendant's minor child or children," or "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG § 1B1.13, cmt. 1.

Mattingley does not attempt to fit his circumstances within these enumerated conditions, but he argues that he does not need to. Specifically, Mattingley argues that these BOP requirements—imposed by § 3582(c)(1)'s statement that the reduction be consistent with Sentencing Commission guidance—no longer bind judicial discretion in the wake of the First Step Act's modification of 18 U.S.C. § 3582(c)(1). Indeed, several district courts have held as much, albeit for varying reasons. *See United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (describing such policy statements as now merely "helpful guidance on the factors that support compassionate release"); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019) (finding that the Sentencing Commission guidelines by their terms apply only to motions brought by BOP); *United States v. Cantu*, No. 1:05-cr-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (stating that while the policy statements remain binding, its catch-all provision must be read more broadly in light of the First Step Act). Several other district courts continue to cabin the meaning of "extraordinary and compelling" to the Sentencing Commission guidance post-First Step Act. *Karr*, 2020 WL 774363, at *3; *United States*

9

*v. Overcash*, No. 3:15-cr-263-FDW-1, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019); *United States v. Rivernider*, No. 3:10-cr-222-RNC, 2019 WL 3816671, at *3 (D. Conn. Aug. 14, 2019).

Resolution of this issue is unnecessary here. Whether or not confined to the Sentencing Commission's definition of "extraordinary and compelling," Mattingley's circumstances do not suffice. With respect to Mattingley's complaints of phantom limb pain and ill-fitting prostheses, USSG § 1B1.13 requires that Mattingley be suffering from "a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Commentary, USSG § 1B1.13. That threshold is not met here. Although Mattingley's ability to ambulate is limited as a double amputee, the materials Mattingly submitted do not demonstrate that his medical issues have worsened during incarceration, especially not to the point where he can no longer provide self-care. *See United States v. Casey*, No. 1:06-CR-00071, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019) (holding that the defendant's limited mobility and inability to climb stairs did not suffice under USSG § 1B1.13, cmt. n.1.); *United States v. Clark*, No. 3:13-CR-163-FDW-1, 2019 WL 1052020, at *1 (W.D.N.C. Mar. 5, 2019) ("declining health, diabetes, stage-3 kidney failure, and back issues that require a walker" did not compromise ability to provide self-care).

With respect to Mattingley's complaint of his family's difficult circumstances caused by incarceration, § 1B1.13 allows for release due to "family circumstances" in the event of "death or incapacitation of the caregiver of the defendant's minor child or children," or "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG § 1B1.13, cmt. 1. Neither of these circumstances are met here.

Even if the cases Defendant cites are correct that § 1B1.13 no longer binds judicial discretion on motions brought under § 3582(c)(1), the Court's conclusion that Mattingley's circumstances are not "extraordinary and compelling" would not change. Mattingley's condition appears substantially the same as it was when this Court sentenced him in late 2017, when the Court was made well aware of Mattingley's medical limitations. Dkt. 75. Indeed, there is even evidence that Mattingley's condition has improved overall. In response to Mattingley's third RIS, a physician noted in late 2019 that "[s]ince arriving at FMC Devens, [Mattingley] has showed a vast improvement in his symptoms," and "[Mattingley] reports during his monthly follow ups that his pain is improvement [sic] with improved daily functioning and sleep, and he asked to discontinue several medications." Dkt. 126-6. Regardless of whether Mattingley's phantom pain has worsened or eased, nothing in Mattingley's motion or supporting evidence points to an incompatibility with incarceration because of his physical or medical condition or his family's financial hardships. *See, Israel*, 2019 WL 6702522, at *9 (stating that the defendant "has the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist"). Mattingley's condition certainly presents unique challenges to incarceration, but "the federal prison system contains many inmates who have medical conditions that make confinement more difficult," *Malone*, 2019 WL 3337906, at *2.

## Conclusion

Because Mattingley neither exhausted BOP's administrative appeals or shown that he should be excused from exhausting them, his motion for compassionate release under 18 U.S.C. § 3582(c) must be denied. Moreover, even if Mattingley had exhausted administrative remedies, he does not present an "extraordinary and compelling reason" for early release from incarceration. An appropriate order will issue.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to Mattingley and all counsel of record.

Entered this 28th day of February, 2020.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE